FILED

2011 Mar-31  PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA



**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | |
|---|---|
| **WILLIE BIES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO. 7:10-CV-0016-SLB** |
| ) | |
| **CITY OF TUSCALOOSA; CITY OF** ) | |
| **TUSCALOOSA  FIRE  &  POLICE** ) | |
| **PENSION BOARD,** ) | |
| ) | |
| **Defendants.** ) | |

**<u>MEMORANDUM OPINION</u>**

This case is presently pending before the court on the following Motions:

1.  Motion to Abate or Dismiss, (doc. 1-3),[1] and Amendment to Motion to Abate or Dismiss, (doc. 4), filed by defendant City of Tuscaloosa;

2.  Motions to Dismiss filed by the City of Tuscaloosa Fire and Police Pension Board, (doc. 1-6 at 13-21; doc. 12);

3.  Motion for Partial Summary Judgment on the Issue of the Falsity of Public Statements Only filed by plaintiff, (doc. 1-2 at 21-25);

4.  First Amended Motion for Partial Summary Judgment on the Issue of the Falsity of Public Statements and Publication Only and Motion for Summary Judgment on Open Records Act Count filed by plaintiff, (doc. 8);

5.  Motion for Leave to File Amended Complaint filed by plaintiff, (doc. 36);

6.  Partial Motion for Summary Judgment Against the City Of Tuscaloosa, Mike Daugherty, Personnel Director (Individually And Officially),

---

[1]Reference to a document number, ["Doc. ____"], refers to the number assigned to each document as it is filed in the court's record.

Hourly Wage Fund, Travelers & Fireman's & Policeman's Funds on Counts Three and Ten (Negligence) & Counts Six and Thirteen of the Plaintiff's First Amended Complaint (42 U.S.C. § 1983 Claims) & Counts Fourteen (Fraudulent Concealment) & Fifteen (Breach of Fiduciary Duty) of the Plaintiff's Second Amended & Restated Complaint, filed by plaintiff, (doc. 45).

Plaintiff Willie Bies has sued defendants alleging that they defamed him and invaded his privacy by making certain statements that were published in the *Tuscaloosa News*. He also alleges that their statements and their failure to provide him certain public documents violated his constitutional rights to due process and equal protection, and as well as violated Alabama's Open Records Act. He has filed a proposed Second Amended and Restated Complaint, (doc. 34), which seeks to add as defendants the Travelers, Mike Daugherty, and the City's Hourly Wage Fund.[2] He also seeks to add additional claims of defamation, invasion of privacy, fraud, breach of contract, and breach of fiduciary duty.

Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that the City's Motions for Abatement are due to be denied as moot; defendants' Motions to Dismiss are due to be granted, plaintiffs' Motions for Summary Judgment are due to be denied, and plaintiff's Motion to Amend is due to be denied.

---

[2]The proposed Second Amended Complaint also names "Fictitious Defendants A, B & C." (*See* doc. 34.) Federal courts do not allow fictitious party pleading. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).

## I. **MOTION FOR ABATEMENT**

Citing Ala. Code § 6-5-440,[3] the City contends that this action is due to be abated and dismissed because it raises the same issues against the same defendants as plaintiff has raised in his motions to enforce and modify filed in the case *Gosa v. Phelps*, CV 75-P-0621-W [hereinafter *Gosa*].  (Doc. 4-1 at 9-10.)  However, this court has denied plaintiff's motions to reopen the *Gosa* case, and that matter remains closed.

Therefore, the court finds that the City's Motions for Abatement, (docs. 1-3, 4), are due to be denied as moot.

## II. **MOTIONS FOR SUMMARY JUDGMENT**

Bies seeks judgment as a matter of law as to (1) the falsity and publication of the alleged defamatory statements, (2) the Open Records claim, (3) the claim of negligence, and (4) the § 1983 claims.[4]

---

[3]Section 6-5-440 provides:

> No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party.  In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.

Ala. Code § 6-5-440.

[4]In an earlier Order, this court denied plaintiff's Motion for Partial Summary Judgment to the extent it sought judgment as a matter of law on claims asserted for the first time in his proposed Second Amended and Restated Complaint.  (Doc. 52.)

For the reasons set forth below, the court finds that plaintiff's Motions for Partial Summary Judgment, (docs. 8 and 45), are due to be denied.

## A. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("it is never enough simply to state that the non-moving party cannot meet its burden at trial").

4

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  "[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655(1962) (per curiam)).  Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## B.  STATEMENT OF FACTS

On or about August 1, 1966, the City of Tuscaloosa hired Willie Bies as its first black officer.  (Doc. 45-6 at 5.)  He was hired as a special officer.  As a special police officer, Bies was not allowed to participate in the Firemen's and Policemen's Pension and Relief Fund [hereinafter "Policemen's Pension Fund"].  (Doc. 13-1 at 19 [citing Ala. Acts No. 328 §§ 2, 6. p. 907 (1959)].)  According to the statute establishing the Policemen's Pension Fund –

> Every fireman and every policeman . . . shall be eligible to participate and shall participate in such fund.  Provided, however, that any policeman or any fireman who is employed as such after the effective date of this Act, and who

at the time of such employment has reached or exceeded the age of thirty-five
(35) years, shall not be eligible to participate in such fund.

(Doc. 30 at 4-5 [1959 Ala. Acts 907, No. 328 § 6 at 909-10].)  The Act defines "policeman"
as "any ***regular*** full time member of the police department of [Tuscaloosa], exclusive of all
irregular, extra, ***special***, or part time members of such department."  (*Id.* at 4 [Ala. Acts No.
328 § 2 at 908] (emphasis added).)  Because he did not qualify to participate in the
Policemen's Pension Fund, Bies was enrolled in the Hourly Employees Pension Fund.  (Doc.
13-1 at 8.)

On May 19, 1975, Bies, together with two other African-American special police
officers – Jimmie L. Gosa, Jr., and Herbert Harris, filed suit against the City, members of the
City's Civil Service Board and the City's Commission Board, alleging, "Defendants
discriminate in every phase of their employment practices against [African-Americans]."[5]
*Gosa*, CV 75-P-0621-W, Complaint (N.D. Ala. May 19, 1975.)  The *Gosa* Complaint
alleged, "Plaintiff Bies has been employed by Defendants as a city policeman for eight years.
He is not certified under the civil service system.  He took the written examination required
by Defendants . . . but either failed to pass or did not score well enough to be certified."  *Id*.
¶ 7.  On July 16, 1975, the Civil Service Board of Tuscaloosa adopted a resolution
terminating Bies's status as a "special officer" and, "upon the effective adoption of [the] rule

_____

[5]The court takes judicial notice of the record in the *Gosa* case.  *See State of Fla. Bd.
of Trustees of Internal Imp. Trust Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704
(5th Cir. 1975)(citing *National Fire Insurance Co. v. Thompson*, 281 U.S. 331, 336 (1930);
*Aloe Creme Laboratories, Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970)).

and resolution," the Tuscaloosa Civil Service Board granted Bies "the status of [a] regular police officer[ ] of the City of Tuscaloosa and [said he was] subject to all the benefits and requirements" of a regular civil service employee. (Doc. 45-1 at 9-10.) At this time Bies was over 35 years old. (Doc. 45-4 at 5; *see also Gosa*, Plaintiff's Motion in Opposition to Petition to Intervene and Alter, Amend or Vacate Modification of Decree at 1-2 (N.D. Ala. Mar. 24, 1993).) Thus, he was too old to join the Policemen's Pension Fund. *See* 1959 Ala. Acts 907, No. 328 § 6 at 909-10.

By June 1976, the focus of the *Gosa* case had become the use of the IPMA Police Officer A-1(M) Test. *Gosa*, Memorandum Opinion (N.D. Ala. June 4, 1976.) The court noted:

> The plaintiffs at the time of instituting this litigation had been denied employment as regular police officers on the basis of other tests then being used in the selection process. The court allowed the action, brought as a class action, to continue as such with the named plaintiffs as representatives even though, during the course of litigation, the IPMA test was adopted as a replacement instrument and the named plaintiffs were given special certification as regular police officers notwithstanding their scores.

*Id*. at 1 n.2. The court held, "Use of the IPMA test to rank applicants for employment on the Tuscaloosa police force has discriminated against blacks." *Id*. at 10. In the "Miscellaneous" section of the court's Memorandum Opinion, the court held, "The claim by plaintiffs for monetary loss allegedly suffered by them in consequence of not having been originally hired as regular patrolmen has not been established under the evidence, and is denied. However, their seniority dates shall be adjusted to show their original dates of hire as special officers."

*Id*. at 12.  Thereafter, the court entered an Order that stated, "Judgment is hereby rendered in favor of the plaintiffs to the extent provided in the Memorandum of Opinion filed June 4, 1976."  The court did not specifically address any issue regarding Bies's participation in the Policemen's Pension Fund.

In August 1981, according to its minutes, Bies appeared before the Policemen's Pension Board asking to join the Policemen's Pension Fund.  (Doc. 45-4 at 1.)  Thereafter, the Board proposed amending the Fund's enabling act to provide that "any policeman . . ., who is employed in the Police Department as a full time Special Officer before reaching the age of 35 years, and prior to the effective date of this Act, shall . . . be eligible to participate in such fund on commencement of contributions to the fund as other Officers are required to do."  (*Id*. at 3.)  However, the proposed amendment was not passed by the Alabama legislature.  (Doc. 1-6 at 33.)

Bies retired on August 1, 1991.  Prior to his retirement, Dave Lozinski, an Analyst with the Travelers, calculated his retirement benefit from the Hourly Employees' Pension Fund as follows:

| Form of Annuity | Monthly Benefit Commencing August 1, 1991 |
|---|---|
| Life Annuity | $    186.59 |
| 10 Year Certain & Life | 181.55 |
| 50% Joint and Survivor | 164.57 |
| 75% Joint and Survivor | 155.43 |
| 100% Joint and Survivor | 147.22 |

8

(Doc. 45-4 at 7.)  The Hourly Employees' Pension benefit was approximately 20% of an employee's average monthly earning.  (Doc. 54-1 at 2.)  A pension from the Policemen's Pension Fund would have paid plaintiff $1,880.00 a month, almost ten times his Hourly Employees' Pension benefit.  (*See* doc. 45-6 at 2; *Gosa*, Transcript at 19 (N.D. Ala. Oct. 25, 1993).)

On August 13, 1991, Nell Boland, Account Executive in the Travelers Asset Management and Pension Services Department, sent Mike Daugherty, a City employee, a letter, which stated:

> As you requested, Bob LaMontagne did some work on the retirement for Mr. Bies.  Assuming he was a participant under the Hourly Plan, the benefit calculation for him results in a Life Annuity of $186.59.  Under your current contract, this benefit would cost a little over $27,000.00
>
> If the City buys his remaining benefit of $1,638.41 from the current contract using the same rate, it would cost the City an additional $237,800.00.  That does seem like quite a bit of money.  Mr. Bies, however, is only 55 years old and there is a strong possibility that he will live many more years.  That is why the annuity is so expensive.

(Doc. 45-4 at 8.)  The City denies that it bought Bies an annuity contract that would pay him $1,638.41 or $186.59, (doc. 54-1 at 4); Bies has not presented any evidence to dispute this fact.

Brian Butler, the City's Director of Human Resources, testified that Bies "never completed the paperwork necessary to receive benefits under the Hourly Pension Plan.  As a result, the City did not purchase the individual retirement annuity for him under the Hourly Pension Plan, and as a consequence, the Plaintiff did not receive [the $186.59] benefit."

(Doc. 54-1 at 4.)  Plaintiff has been quoted as saying that he "turned down" this benefit.  (*See* doc. 45-6 at 5-8.)

On or about October 13, 1992, the following article appeared in the *Tuscaloosa News*:

The Tuscaloosa City Council today initiated steps to correct a holdover from the days of racial segregation.

The council voted to ask [the] federal district court for a ruling which would include two black police officers in the city's fire and police pension fund.  City attorney Bob Ennis said it will take a federal court order to enable the city to include the two officers.

Ennis said the first black police officers employed by the city were not hired as regular police officer[s] with full civil service benefits.  They were "special police officers" and were not included in the pension.

A 1973 federal court ruling[6] ended the separate designations for black and white police officers.  At that time, black police officers became full civil service employees entitled to the same rights as other public safety employees, including the pension fund.[7]

But the state statute establishing the pension fund requires that employees begin in the pension fund before they become 35 years old.  Two of the black officers who had been serving as special police officers, Willie Bies and Herbert Harris, were older than 35 and were not included in the pension fund.

Both Bies and Harris began serving as special police officers before they were 35 but both were older than 35 when the court order was issued.  They have now retired and want to be included in the pension fund, Ennis said.

---

[6]The court assumes that this is a reference to the 1976 Memorandum of Opinion and Order as it can find no lawsuits involving Bies before the *Gosa* case.

[7]The *Gosa* Memorandum of Opinion and Order did not include such a finding. However, the Civil Service Board had made plaintiff a regular police office in 1976 and the *Gosa* Memorandum of Opinion and Order made his seniority retroactive to 1966.

10

> Ennis said the pension board could not rectify the situation because the age limit is included in the state law establishing the fund.  No local act or action can supersede state law.
>
> The only option for the city is to petition the court to place the officers under the pension fund, Ennis said.  He said the city had been working with the officers trying to get them in the pension fund.
>
> "This is not adversarial,"  Ennis said.  "Everybody's working together on this.  It's taken us a long time."
>
> If the judge does place the officers under the pension fund, they must pay into the fund what they would have paid had they been included in the fund.  The city also must make its contribution.

(Doc. 45-5 at 4 [footnotes added].)

In 1993, seventeen years after the Order in *Gosa* and over a year after he had retired,

Bies petitioned the *Gosa* court to modify it prior Order.  *Gosa*, Petition for Modification of

Decree (N.D. Ala. Jan. 6, 1993).  In his Petition, Bies alleged:

> 2.   After a trial on the merits, this Court entered an order which prohibited use of an invalidated pre-employment test.  Further, the Court ordered that certain remedial measures be implemented with respect to hiring practices by the City, and adjusted the seniority dates for the Plaintiffs, to show their original dates of hire as special officers.
>
> 3.   ***One issue not specifically addressed by this Court in its order was the status of the Plaintiffs with respect to the Police and Firemen's Pension Fund.***  All City of Tuscaloosa police officers participate in this fund, ***except*** for Officers Herbert Harris and Willie Bies (now retired).  ***Both Harris and Bies participate in the City's Pension Plan for hourly employees***, a separate plan from the Police Pension Fund with substantially less benefits.

*Id*. ¶¶ 2-3 (emphasis added).  Thereafter, the *Gosa* Order was modified.  *Gosa*, Modification

of Decree at 1 (N.D. Ala. Jan. 29, 1993).  The Modification stated –

11

1.  Bies [is] to be retroactively placed on the rolls of the Police and Fireman's Pension Fund.

2.  Bies . . . shall be paid benefits from the Police and Fireman's Pension Fund retroactively from the date of [his] retirement[ ].

3.  Bies . . . shall . . . pay [his] contributory share as agreed to by the parties.

4.  The City of Tuscaloosa shall secure funds from the Travelers Pension Fund, in which . . . Bies [has] participated to date, and transfer these funds into the Police and Firemen's Pension Fund to offset the cost of the contributory share owed by Bies . . . to the Police and Firemen's Pension fund.

5.  The City of Tuscaloosa shall pay into the fund its contributory share for Bies . . ., based on the formula established by the Act, which shall be determined as of the date of this order.[8]

---

[8]The City contends that it "gratuitously offered to contribute a specific sum ($38,912.31) to the Police Pension Fund on the Plaintiff's behalf, and also to attempt to have the contributions by the City to the Hourly Pension Plan ($12,091.01) transferred to the Police Pension Fund." (Doc. 53 at 6-7 [citing doc. 45-4 at 9].)  It also contends that its "performance was subject to the Police Pension Board first agreeing to admit the Plaintiff to the Police Pension Fund," which did not occur. (*Id*. at 7 [citing doc. 13-2 at 6, 25-26; doc. 45-4 at 9; doc. 45-8 at 4].)  A review of the record before the court in this case and the *Gosa* case reveals that, as far back as 1992, the City of Tuscaloosa was attempting to place Mr. Bies under the Police Pension Fund.

*Id*.  The Board, who was not a party to the *Gosa* case, moved to intervene to set aside the Modification.[9]  The court granted this Motion and set aside the Modification.  *Gosa*, CV 75-P-0621-W, Order (N.D. Ala. Mar. 30, 1993).

A hearing on the Petition to Modify was held on October 25, 1993.  *Gosa*, Transcript at 1 (N.D. Ala. Oct. 25, 1993).  After noting that "delays, lateness, [and the] failure of people to follow up and to prepare" had "permeated" the case, the court stated:

> The conclusion I reach is that the amount that would need to be paid to the Tuscaloosa Firemen's and Policemen's Pension and Relief Fund, as of November 1, 1993, for the purpose of prospective payments from that point forward would be, as it related to Willie Bies, $230,000.00 . . . .  [This] amount[ ] would be needed by the fund in order to start making prospective payments from November 1st forward.

> I conclude, further, that the fund should be paid that amount if [Bies is] to be placed under the fund, for prospective pension payments.

> ***I do not reach the issue as to whether those payments should be made or how they should be made as between [Bies] and the City***, or indeed whether other arrangements might be more appropriate, which I suspect they would be.  That matter is one for further determination.

_____

[9]The Board argued, *inter alia*:

> As a result of the agreement entered into by the City of Tuscaloosa and Willie Bies . . ., the Fund has been injured and damaged because it has been deprived of interest and earnings on monies that would have been contributed by Willie Bies . . . and the City of Tuscaloosa.  No provision was made to prevent this injury in the agreement incorporated into the modification order.

*Gosa*, Petition to Intervene and to Alter, Amend or Vacate Modification of Decree ¶ 4 (N.D. Ala. Feb. 4, 1993).

> And what I am doing, at this time, is concluding that if [Bies is] to be put under the fund for pension benefits, then it would require a contribution to the fund by the plaintiff[ ], the City, or both, in the aggregate of . . . $230,000.00 effective as of November 1, 1993, dealing with the prospective payments, pension benefit payments.

> . . .

> This matter is one that should have been presented by either [Bies or the City] to the Court back in either the late '70s or certainly the early '80s while the matter could have been resolved in a more satisfactory manner.  And it's not clear that either [Bies or the City] can escape, totally, its responsibility for not having presented the matter to the Court for resolution.

*Id*. at 17, 19-21.  No further written orders were made and no further activity occurred in the

*Gosa* case until Bies filed a Motion for Leave to Propound Post Judgment Discovery

Requests on September 11, 2009.

In the instant case, Bies alleges that money for a pension was withheld from his

paycheck.  (Doc. 8 at 2.)  He has filed copies of five check stubs.  (Doc. 8-1.)  Plaintiff

testified that the "fire/police fund" deduction category on his pay stubs refers to deductions

made for the Fire and Policemen's Fund.  (Doc. 45-8 ¶ 3; *see* doc. 8-1.)

Plaintiff was made a regular police officer on July 16, 1975.  (Doc. 45-1 at 9-10.)  Pay

stubs from February 28, 1975, and December 19, 1975, show that no amount of Bies's pay

was withheld for the "fire/police fund," although 3.8% of his gross pay was withheld for

"pension."  (Doc. 8-1 at 1.)  A pay stub from November 2, 1979, and one from September

2, 1983, show that less than 2% of Bies's gross pay was withheld for the "fire/police fund;"

nothing was withheld under "pension."  (*Id*. at 1-2.)  His pay stub from May 3, 1991, shows

14

that 1% of his gross pay was withheld for "Pl. Ben;" nothing was withheld as "pension." (*Id.* at 2.) Participants in the Policemen's Pension Fund contribute 5% of their pay to the Fund. 1959 Ala. Acts 907, No. 328 § 7 at 910.

John Willett, Chairman of the Policemen's Pension Board, testified that the Policemen's Pension Fund never received any money from Bies. (Doc. 13-1 at 6.) Glenn Krebs, Payroll Supervisor, explained the pay stubs as follows:

> Up until sometime in 1978, employees who were members of the Hourly Fund had employee contributions of 3.8% deducted from their paychecks. The City also paid an employer contribution. However, at some point in 1978, due to demands from Hourly Employees, the employee contributions [were] stopped and the amounts they had previously contributed were refunded to the employees. From that time on the Hourly Fund was funded by the City with no contributions from the employees. That's the reason the paystubs after that year do not show a pension deduction.

(Doc. 13-1 at 8-9.) He also testified that deductions for "Fire/Police Fund" and "Pl Ben" were "voluntary deduction[s] made by police officers who elected to contribute to a fund called 'Tuscaloosa Police Benefit Fund.' . . . The monies from these deductions [were used] for the purpose of paying for flowers . . . , parties when the officer would leave service, small cash payments when an officer was hospitalized, and certain other similar benefits." (*Id.* at 9.) Plaintiff has not disputed this evidence, except to deny he ever received a refund and to say that the deductions for "Police/Fire Fund" were paid to the Policemen's Pension Fund. (Doc. 45-9 at 6; doc. 18 at 11.)

15

Plaintiff challenges statements made in the Tuscaloosa News by Willet and City attorneys Robert Ennis and Tim Nunnally that suggest he did not pay into the Policemen's Fund.  (Doc. 1-2 at 22; doc. 8 at 2-3.)  On February 15, 2009, an article appeared in the *Tuscaloosa News*, entitled "Fight to get paid."  (Doc. 45-6 at 5.) This article states:

On Aug. 1, 1966, the Tuscaloosa Police Department hired the city's first black policeman.

Willie Bies Jr., a Tuscaloosa native, was stacking beer at a Greene Beverage Co. warehouse on Mallisham Parkway that Monday 42 years ago.

"Chief William Marable and Inspector Dan Burroughs came down to the warehouse and hired me personally," said Bies, 72.  "I was surprised to see them."

. . .

"They were looking for black officers," he said.  "They had put out applications.  They . . . cost $5 to fill out.  But after I turned mine in, I didn't hear back from them for a year."

Bies said he went to the Police Department and took the oath of office that same day.

Twenty-five years later, on Aug. 1, 1991, Cpl. William Bies retired from the department.

Though he had worked full-time during his tenure as a city officer, he left the department with hardly a cent.

"I never did get a pension," Bies said.  "I left there with nothing.

"We hardly got a thank you," he said. "But we made it so that everyone who came after us didn't have to go through that."

Bies said he and Herbert Harris, another black officer who was transferred to the Police Department from the city's sanitation department,

were **never allowed to pay into a pension fund**.  However, Bies said they still had Social Security taxes taken out of their checks while other officers were exempt from paying Social Security taxes.

"**When we asked them why we couldn't get our pension, they said we were too old and it would take an act of legislation**," Bies said.

. . .

"They also tried to give me the retirement pay that the street department gets, which would have been less," he said.  "The police retirement was about $2,100 a month and would have been more with me having a wife.  The street department retirement was about $400 a month.  **We turned that down**.  We wanted what we deserved to get."

. . .

(Doc. 45-6 at 5-8 [emphasis added].)

An article published on March 11, 2009, which quotes Ennis and is entitled "Pension

board says city's first black cop not eligible," states:

Tuscaloosa's first black police officer has lost another round in his fight to gain a pension from the city.

The Tuscaloosa Police and Firemen's Pension Board decided Monday that because Willie Bies Jr. has not paid into the pension fund, he is not eligible to benefit.

The decision also affects the family of the late Herbert Harris, who, like Bies, worked 25 years as a Tuscaloosa police officer.

'I regret they were not put into the pension when hired,' said John Willett, pension board chairman.  'The city usually puts people in there when they're hired, but for whatever reason [Bies] and Herbert were not.'

Bies said he was not surprised by the decision.

. . .

17

> *'When we asked them why we couldn't get our pension, they said we were too old and it would take an act of legislation,' Bies said during a February interview*.

> In 1980, David Andres spearheaded an attempt to add Bies and Harris to the pension plan after Andres was named chairman of the police and firemen's pension board.

> 'The pension board put a ballot box in the police and fire departments to ask the men whether they thought we should get a pension,' Bies said in February.  'They voted no.'

> . . .

> *Bies said he would still like to know how much money he and Harris' family would have to pay into the pension fund to be eligible to draw from it even though he doesn't know if he has enough money to pay*.

> . . .

(Doc. 1-6 at 23-25 [footnote and emphasis added].)  About two weeks later, another article appeared in the Tuscaloosa News, entitled "Mayor, former officer discuss pension case." (Doc. 45-7 at 1-2.)  This article cites Bies as stating that he was "*denied an opportunity to pay into the police and firemen's pension plan on numerous occasions*."  (*Id*. at 1 [emphasis added].)

The August 7, 2009 article, entitled "City agrees to pay first black officer," states in pertinent part:

> The Tuscaloosa City Council on Tuesday authorized the placement of almost $1.4 million in the city's pension plan for hourly workers.

> Willie Bies Jr., the city's first black police officer, is owed a $61,799.95 chunk of that money, plus a monthly payment of between $147 and $186.

18

But the hourly pension plan money owed to him is completely separate from the Firemen's and Policemen's Pension and Relief Fund money that Bies, and some of his now-deceased comrades, have been fighting for since 1975.

"Recently, Mr. Bies contacted Mayor [Walt] Maddox and I learned, while sitting in on that meeting, that he had never received the city's contribution from his hourly pension benefits," said Timothy Nunnally, a senior associate attorney with the city.

"When I heard that, I knew that the firemen's and policemen's pension issue was separate, so I investigated the hourly benefits and found out that he was eligible for money from the hourly pension, which would have given him a monthly benefit having started in September 1991, the month after he retired, through now, plus 6 percent interest," he said.

Nunnally said the $61,799.95 is a lump sum of the monthly benefits that Bies would have received from the city from September 1991 to June 2009.

"Now that the City Council has passed that [$1,361,000] be placed in the hourly pension plan, a check to Met Life will be mailed out Monday, and it will take a few days for them to get that check," Nunnally said. "We'll then ask Met Life to pay Mr. Bies the money he's owed under the hourly pension plan."

Nunnally said Bies should receive his check within the next two weeks, but by no later than the end of August.

Bies said he's not satisfied with the amount.

"I think the city should be paying more, because when I retired, they offered me $400 a month if I took the pension for the city garbage and cleaning department," Bies said.

In an article appearing in the *Tuscaloosa News* on August 30, 2009, Willet is quoted as saying:

19

> "The pension board has never had a problem with [Bies and Harris] being in the fund," said John Willet, chairman of the pension board since 1983.[10]
>
> "We just wanted them to pay into it first," he said.  "As long as the pension is made whole, we don't care who's in it."

(Doc. 1-6 at 32 [footnote added].)  This article also states:

Plaintiff and his wife, Vester Bies, filed a charge of discrimination against defendants on September 8, 2009.  (Doc. 1-5 at 46.)  The charge states:

> [Defendants] *recently* decided to not pay my matching payments into the [Fund], to not recognize me in the [Fund] and to not pay my full benefits from the [Fund].  They offered to pay me benefits allegedly based on participation in the Street & Sanitation fund [otherwise known as the Hourly Employees Fund] and allegedly calculated pursuant to the same.

(*Id.* [emphasis added].)

On October 11, 2009, Bies's attorney sent a letter to the City and the Board asking for a retraction of all public statements that Bies had not contributed to the Policemen's Fund. (Doc. 8-2 at 1.)  However, Bies has stated publicly that he was never allowed to contribute to the Policemen's Pension Fund.  (Doc. 1-6 at 24; doc. 45-7 at 1; *Gosa*, Plaintiff's Motion in Opposition to Petition to Intervene and Alter, Amend or Vacate Modification of Decree ¶¶ 2-3 (N.D. Ala. Mar. 24, 1993); *Gosa*, Petition for Modification of Decree ¶ 3 (N.D. Ala. Jan. 6, 1993)).  He also asked defendants to admit that Bies had made payments to the Policemen's Fund and to tell him "the amount of said payments and the current location

---

[10]Willet testified that he has been Chairman of the Board since 1992.  (Doc. 13-1 at 5.)

and/or disposition of said payments." (Doc. 8-2 at 1.) In this letter, plaintiff's counsel also

requested the following documents:

a. Copy of all [plaintiff's] payment records, including but not limited to check stubs, payroll records, etc.; and

b. Copy of any and all records reflecting [plaintiff's] contributions and/or payroll deductions for the City of Tuscaloosa's [Fire] and Police Pension [Fund], including but not limited to records itemizing said payments, including accrued interest, showing how said payments were held, distributed, disposed of and/or their current location; and

c. Copy of any and all City of Tuscaloosa's [Fire] and Police Pension Fund bylaws, governing rules, guidelines, procedures, circulars, pamphlets, etc. from the date [plaintiff] was hired to the present, including any and all amendments thereto; and

d. Copy of any and all City of Tuscaloosa Hourly Wage Employee Pension Fund bylaws, governing rules, guidelines, procedures, circulars, pamphlets, etc. from the date [plaintiff] was hired to the present, including any and all amendments thereto; and

e. Copy of any and all records reflecting [plaintiff's] contributions and/or payroll deductions, if any, for the City of Tuscaloosa's Hourly Wage Employee Pension, including but not limited to records itemizing said payments, including accrued interest, showing how said payments were held, distributed, disposed of and/or their current locations; and

f. Copy of any and all records reflecting [plaintiff's] contributions and/or payroll deductions for Social Security, including but not limited to records itemizing said payments, including accrued interest, showing how said payments were held, distributed, disposed of and/or their current location[.]

(*Id.* at 2.) Plaintiff alleges that neither defendant provided him with the records requested.

(Doc. 8 ¶ 3.)

The City's attorney, Thomas Bobitt, testified that the City has not denied plaintiff's request; rather, it has not acted upon the request because plaintiff's attorney did not use the form required by Tuscaloosa City Ordinance 2-4.[11]  (Doc. 13-1 at 12.)  Moreover, Bobitt contends that some of the documents requested regarding Bies's pay are confidential and are exempt from disclosure.  (*Id*.)  The Board contends that it is not a public entity subject to the Open Records law.  (Doc. 1-6 at  18.)

In his proposed Second Amended Complaint, Bies alleges that on August 4, 2009, City officials "publicly deliberated upon, [and] made decisions about the plaintiff's retirement requests without his permission to disclose the same and without affording him proper notice and an opportunity to be heard as guaranteed by the respective enabling legislation, rules and regulations of said Funds."  (Doc. 45 at 8.)  The evidence indicates that on August 4, 2009, the City authorized funding for the Hourly Employees' Pension Plan. (Doc. 45-7 at 4.)  The Tuscaloosa News reported that the amount included $61,799.95, which was a lump sum payment of Bies's past benefits, and an amount sufficient to provide Bies's future monthly benefits of  "between $147 and $186."  (Doc. 45-7 at 7, 10.)

---

[11] Subsection (b) of the Ordinance provides, "All requests to review and/or inspect public records must be made in writing on the form attached to this policy."  Tuscaloosa City Ordinance  2-4(b),  *found  at*  <<http://library.municode.com/index.aspx?clientId =10302&stateId=1&stateName=Alabama>>.

## C. DISCUSSION

### 1. Defamation – The Truth of Statements Alleged to be Defamatory

Plaintiff asks the court to enter judgment as matter of law on the issue of the falsity of the defendants' statements regarding whether he paid into the Policemen's Pension Fund. Bies alleges, "It is undisputed that the plaintiff paid into and the defendant deducted money from the plaintiff's check for the City of Tuscaloosa Policeman's and Fireman's Fund. Consequently, all statements made to the press to the contrary are false and any effort to suggest that the plaintiff had not paid into said Fund, necessarily, placed the plaintiff in a false light."  (Doc. 8 at 2.)  The City has presented evidence that plaintiff's pay stubs do not show any contribution to the Policemen's Pension Fund.  (Doc. 13-1 at 8-9.)  Also, Willet testified, "Mr. Bies has not paid any money into the pension fund," and that he did "not [find] any financial records showing otherwise." (Doc. 13-1 at 6.)  Indeed, Bies concedes that there is a question of fact as to whether he paid any money to the Fund.[12]  (Doc. 18 at 4-5.)

---

[12]Bies contends:

> While there may be a genuine issue of material dispute relating to the deduction of money from the plaintiff['s] check for the Fund, there is no dispute regarding the City's official characterization of Corporal Bies['s] effort to seek recognition as a "regular police officer."  . . . [T]he City states that plaintiff Bies has paid nothing since 1993 and therefore he is "seeking something for nothing."  This statement clearly ridicules Corporal Bies'[s] service as a police officer.  Therefore, plaintiff Bies is entitled to an order establishing that the City has promulgated an official policy that is defamatory toward plaintiff Bies.

(Doc. 18 at 4-5 [footnotes omitted].)  Plaintiff's Motion for Partial Summary Judgment does

Based on this evidence, the court finds that plaintiff has not shown that the defendants' statements that he did not contribute to the Policemen's Pension Fund are false as a matter of law. Therefore, his Motion for Partial Summary Judgment as to the falsity of defendants' statements will be denied.

## 2. Count Seven – Open Records Act

Plaintiff's First Amended Complaint alleges, "The defendants['] refusal to turn over said records [requested in a letter from his attorney] is a violation of the Open Records Act of Alabama." (Doc. 1-1 at 18; *see also* doc. 34 ¶ 39.) He contends that he is entitled to judgment as a matter of law on his claim that defendants violated Alabama's Open Records Act; he argues:

> 3. Furthermore, it is undisputed that the plaintiff made a record request pursuant to the Open Records Act (Alabama Code § 36-12-40), that said records are public records and that said records are in the custody of the defendants. The defendants have refused to produce said documents. Therefore, they have clearly violated said act and injunctive relief is necessary to afford the public future protection from such arbitrary denials of access to public records.

(Doc. 8 at 3.) The City contends that plaintiff's Motion for Summary Judgment is due to be denied because it has not refused plaintiff's request for public records, and states that it has not responded to the request because it was included in a letter from plaintiff's attorney and not on the City's required form. (Doc. 13 at 8.) It also argues that some of the records

---

not seek "an order establishing that the City has promulgated an official policy that is defamatory toward plaintiff Bies." Rather, his Motion asks the court to find that the statements made by Willet and Ennis were false as a matter of law. They are not.

requested are not subject to the Open Records Act.  (*Id*.)  The Board argues that it is not a public entity subject to the Open Records Act and, therefore, Bies's Motion is due to denied. (Doc. 17 at 2.)  In his Reply Brief, Bies argues, "To the extent that the City admits that some of the records requested by plaintiff Bies are subject to the Open Records Act, the plaintiff[']s summary judgment is due to be granted.  [Its] statements that [it has] not denied the request and that the failure to use a pre-printed form allows them to ignore the open records request are without merit."  (Doc. 18 at 8.)  He does not address the Board's response.  (*See id*.)

Because plaintiff does not rebut the Board's showing that it is not a public entity covered by the Open Records Act, his Motion for Partial Summary Judgment is due to be denied as to the Board.

Section § 36-12-40 of the Alabama Code provides, "Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute."  A "public writing of this state" is "such a record as is reasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by our citizens." *Stone v. Consolidated Pub. Co.*, 404 So. 2d 678, 681 (Ala. 1981).  A public officer may require that the party requesting access to a pubic writing complete a form, so long  as the officer does not require use of the form "to dissuade people from seeking the records and is not used in the ordinary course as a means to prevent people from having access to such

records." *Blankenship v. City of Hoover*, 590 So. 2d 245, 250 (Ala. 1991).  Also, "sensitive personnel records" are excluded from the Open Records Act.  *Stone*, 404 So. 2d at 681; *see also Blankenship*, 590 So. 2d at 250 (excluding W-2 forms from disclosure; "because of the very nature of W-2 forms, which contain information pertaining to income deferral, retirement, withholding, etc. – information which is more personal than public – [the City] is under no obligation to make these forms available for public disclosure.)

Tuscaloosa City Ordinance 2-4 requires use of a specific form to request public records.  Plaintiff has offered nothing to demonstrate that the City's form is improper.  Also, he has presented no evidence to prove that the Ordinance was intended to dissuade or prevent access to public writing.  He does not address the City's argument that his pay records are not subject to disclosure under the Open Records Act.

The court finds that plaintiff has not shown that he is entitled to judgment as a matter of law as to his claim that the City violated the Open Records Act; his Motion for Summary Judgment will be denied.

### 3.  Count Three – Negligence

In his Partial Motion for Summary Judgment, plaintiff contends that he is entitled to judgment as a matter of law as to his negligence claim.  (Doc. 45 at 10-11.)  His First Amended Complaint states, "The Defendants' [sic] had a duty to keep the plaintiff's personnel information private and to be honest about the same.  The defendants' [sic]

breached this duty by being dishonest and by wrongfully disclosing the plaintiff's private personnel information." (Doc. 1-1 at 14.)

Plaintiff does not argue what sort of "sensitive personnel information" was disclosed to the public. Indeed, given the evidence of Bies's continuing dialogue with the press, such personnel information became public, through no action of the City, months – if not years – before the newspaper articles were published. Moreover, no "personnel information" was disclosed by defendants that Bies himself has not inserted into the pubic dialogue he has been conducting through the press. As set forth above, plaintiff has not established that the information in the articles was false. Finally, plaintiff has pointed to no evidence creating a legal duty to provide plaintiff with his personnel file.

Therefore, the court finds plaintiff has failed to establish he is entitled to judgment as a matter of law on his negligence claim as asserted in his First Amended Complaint. His Motion for Summary Judgment will be denied.[13]

### 4. Count Six  – Section 1983 Claims

In his First Amended Complaint, plaintiff alleges:

> 22.  On or about October 11, 2009[,] the plaintiff requested various public records from the defendants . . . .  The defendants have denied the plaintiff access to said information and have, to date, refused to disclose said information to the plaintiff.  The defendants denial of access to the public records requested herein, coupled with their public campaign defending their

---

[13]To the extent plaintiff seeks partial summary judgment as to Count Ten of his Second Amended and Restated Complaint, such motion was previously denied by the court. (*See* doc. 52.)

decision to deny the plaintiff entry into the Fund and all rights thereto, amount to a denial of the plaintiff's federal and state due process and equal protection rights as identified in the 14th and 5th amendments to the US Constitution, section 5 of the Alabama Constitution and federal and state common law.  As such the defendants' conduct violated 42 U.S.C. 1983 in that the defendants' have deprived the plaintiff of rights protected by the US and state Constitution[s].

23.  The defendants['] refusal to allow the plaintiff access to the public records requested herein amount[s] to a denial of the plaintiff's right to privacy and the plaintiff's right to defend himself against false and defamatory allegations . . . .  The plaintiff's "right to privacy" is found in the 14th and 5th amendments to the US Constitution, the Alabama Constitution and state and federal common law.

(Doc. 1-1 at 16-17.)

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  The first step in any such claim is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271(1994)(quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979); citing *Graham v. Connor*, 490 U.S. 386, 394 (1989) and *Baker*, 443 U.S. at 140)(internal quotations and citations omitted).

In his proposed Second Amended Complaint, plaintiff alleges that he "has a liberty interest, a property interest, and a privacy interest in his retirement benefit, monetary distribution, health benefits and retirement personnel information."  (Doc. 34 ¶ 32 [footnote omitted].)  He contends that defendants' denial of the requested records and their "campaign" of "defending their decision to deny the plaintiff entry to the Fund . . . amount to a denial of [his] federal and state due process and equal protection rights identified in the 4th, 14th and

28

5th amendments to the US Constitution, section 5 of the Alabama Constitution and federal and state common law." (*Id*. ¶ 34.) He also contends that he is a class of one as he has been treated differently from all other retires in violation of his right to equal protection. (*Id*.) Moreover, he contends defendants violated his constitutional right to privacy by refusing to allow him access to the requested documents. (*Id*. ¶¶ 35-36.)

Plaintiff contends:

> [T]here is no genuine issue of material fact regarding whether the plaintiff is entitled to notice and a hearing by virtue of his "civil servant" status, his participation in the Hourly Fund, his participation in the Fireman's & Policeman's fund, his ownership rights to his monetary contribution to the respective Funds and his exposure to "diminution in pay."

(Doc. 45 at 1-2.) He also argues:

> 3. The Plaintiff asserts that there is no genuine issue of material fact regarding whether the City of Tuscaloosa [and the] Fireman's & Policeman's Fund . . . ever gave the plaintiff notice and an opportunity to be heard before the Hourly Wage Board, the Fireman's & Policeman's Board and/or the City of Tuscaloosa Civil Service Board on the issues of his Hourly Wage . . . retirement and/or his Fireman's and Policeman's . . . retirement.
>
> . . .
>
> 5. The[re] is no genuine issue of material fact that all of said claims are ripe either because they have been continuing, because said rights and privileges were concealed from the plaintiff and/or because each individual deliberation required that the plaintiff be afforded certain Constitutional, statutory and other rights guaranteed by his status in said fund or as a civil servant. The plaintiff was not aware of and was never notified of the rights identified above.

(*Id*. at 2-3.)

### a. Statute of Limitations

In § 1983 actions, federal courts apply the state statute of limitations governing state actions for personal injury. *Albright*, 510 U.S. at 280 n.6 (citing *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985)).  The question when the limitations period begins to run, however, is one of federal law. *Id.* (citing *Wilson*, 471 U.S. at 268-71; *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991)).  "For a cause of action under § 1983 the limitations clock begins to run when the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Driessen ex rel. B.O. v. Florida Dept. of Children and Families*, 351 Fed. Appx. 355, 356 (11th Cir. 2009)(quoting *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003))(internal quotations omitted)(unpublished).  "It is well settled that the statute of limitations for a § 1983 action brought in Alabama is two years." *Williams v. Monroe County Bd. of Educ.*, 2010 WL 1780362, 3 (S.D. Ala. 2010)(citing *Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir. 1992)(citing Ala.Code § 6-2-38(*l*))).

Plaintiff contends that violations of his constitutional rights is a continuing violation.  "[T]he critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." *Porter v. Ray*, 461 F.3d 1315, 1323 (11th Cir. 2006)(quoting *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir.2003)).

"Pension checks . . . are based on a pension structure that is applied only once, **when the employee retires**, and the pension checks merely flow from that single application. *Maki v. Allete, Inc.* 383 F.3d 740, 744 (8th Cir. 2004)(citing *Florida v. Long*, 487 U.S. 223, 239 (1988))(emphasis added). Therefore, any § 1983 claim for a pension from either the Police and Firemen's Pension Fund or the Hourly Employees Pension Fund accrued, at the latest, on the day Officer Bies retired in 1991. The fact that plaintiff never received the pension is a continuing consequence of decisions made more than two years before plaintiff filed this case. In fact, the statute of limitations for such claims expired 18 years ago. Therefore, plaintiff may not maintain a § 1983 action based on denial of any due process and/or equal protection in the deprivations of his interests in these pension benefits, including "his participation in the Hourly Fund, his participation in the [Policemen's Pension] fund, his ownership rights to his monetary contribution to the respective Funds and his exposure to "diminution in pay.'" (Doc. 45 at 2.)

The court will deny plaintiff's Motion for Summary Judgment as to his § 1983 claim based on deprivations of these interests.

### b. Procedural Due Process

The Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. 14, § 1. "This Clause imposes procedural limitations on a State's power to take away protected **entitlements**." *District Attorney's Office for Third Judicial Dist. v. Osborne*, ____ U.S. ____, 129 S. Ct.

2308, 2319 (2009)(citing *Jones v. Flowers*, 547 U.S. 220, 226-39 (2006))(emphasis added);

*see also Weaver v. Graham*, 450 U.S. 24, 30 (1981)("The Due Process Clause "solely

protect[s] pre-existing [or vested] entitlements."). "[A]t a minimum, the Due Process Clause

requires notice and the opportunity to be heard incident to the deprivation of life, liberty or

property at the hands of the government." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th

Cir. 2003)(citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).

As set forth above, the record shows a disputed fact as to whether plaintiff was

entitled to the documents requested; therefore, he cannot establish – as a matter of law – that

denial of requested documents violated his constitutional right to due process.  Likewise, as

plaintiff had refused the Hourly Employees Pension years ago, he cannot establish that he

was entitled to such pension.  Therefore, he has not shown, as a matter of law, that he was

entitled to notice and an opportunity to be heard at the August 2009 hearing.[14]

Plaintiff's Motion for Summary Judgment as to his § 1983/due process claim will be

denied.

### c.  Equal Protection

Plaintiff contends that he is entitled to judgment as a matter of law on his § 1983

claim based on denial of his right to equal protection:

It is undisputed that other employees and retirees are generally afforded the
appropriate notices and opportunities to appear before the Civil [S]ervice

---

[14]The court notes that plaintiff has not cited any case law that he is entitled to notice and hearing before the City could ***give***, as opposed to deprive, him of benefits.

Board, Hourly Fund and the Policeman's Fund.  Consequently, the plaintiff is being treated differently that other employees in violation of the Equal Protection Clause.

The defendants['] denial of access to the public records requested herein, coupled with their public campaign defending their decision to deny the plaintiff entry into the Fund and all rights thereto, amount to a denial of the plaintiff's federal . . . equal protection rights as identified in the . . . 14th . . . amendment[ ] to the US Constitution . . . .  As such, the defendants' conduct violated 42 U.S.C. 1983 in that the defendants[ ] have deprived the plaintiff of rights protected by the US . . . Constitution.  The plaintiff has been treated differently than all other retirees in violation of the Equal Protection Clause of the US Constitution in that other retirees have been afforded the full benefit of any and all rights and privileges thereto.

(Doc. 45 at 15.)  Plaintiff's Complaint alleges he was a  "class of one."  "A 'class of one' equal protection claim does not allege discrimination against a protected class, but rather asserts that the plaintiff 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Leib v. Hillsborough County Public Transp. Commission*, 558 F.3d 1301, 1306 (11th Cir. 2009)(quoting *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1032 n.1 (11th Cir. 2008)(quoting *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007))).  "To prove a 'class of one' claim, the plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him."  *Id*. at 1307 (citing *Young Apartments*, 529 F.3d at 1045).

Plaintiff has presented no evidence of similarly-situated individuals.  Nothing in the record indicates that other individuals have requested and received public documents without

using the City's form.  Nothing in the record indicates that any other retirees have been given a pension from a fund in which they did not participate or been given a pension that they had refused.  Moreover, nothing in the record indicates any other employees or retirees have made public statements to which defendants did not respond.

The court finds plaintiff has not established, as a matter of law, that defendants violated his right to equal protection.  Therefore, Bies's Motion for Summary Judgment will be denied.

### d.  Substantive Due Process/Invasion of Privacy

"The 'right to privacy' is not found in any specific guarantee of the Constitution. Instead, the Court has recognized that 'zones of privacy' may be created by certain specific constitutional guarantees or fundamental rights."  *Garcia v. United States*, 666 F.2d 960, 965 (11th Cir. 1982)(citing *Paul v. Davis*, 424 U.S. 693 (1976)).  "These fundamental rights include 'matters relating to marriage, procreation, contraception, family relationships, child rearing and education.'"  *Id.* (quoting *Paul*, 424 U.S. at 713.)  "The Supreme Court has recognized that individuals possess a constitutional right to privacy[, and it] has generally couched the right in terms of substantive due process, guaranteed by the Fourteenth Amendment."  *In re Soliman*, 134 F. Supp. 2d 1238, 1254 (N.D. Ala. 2001)(citing *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997); *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 278 (1990)).

Plaintiff contends that defendants' refusal to allow him access to the public records requested, with which he could defend himself against false and defamatory allegations, denied him his constitutional right to privacy.  (Doc. 45 at 14.)  The court finds, as a matter of law, ***nondisclosure*** of public records is ***not*** an invasion of ***privacy*** – constitutional or otherwise.  Plaintiff has not provided the court with any legal citation to the contrary.

Therefore, plaintiff's Motion for Summary Judgment on his § 1983/privacy claim will be denied.

For the reasons set forth above, plaintiff's Motions for Partial Summary Judgment, (docs. 1-2 and 45), will be denied.

### III.  THE CITY'S AND THE FUND'S MOTIONS TO DISMISS

### A.  MOTION TO DISMISS STANDARD

Defendants have moved to dismiss the Complaint for failure to state a claim upon which relief can be granted.  The purposes of such a motion, authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, is to test the facial sufficiency of plaintiff's statement of claim for relief.  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1367 (11th Cir. 1997).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The court assumes the factual allegations in the complaint are true and gives plaintiff the benefit of all reasonable factual inferences.

*Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Nor is it proper to assume that plaintiff can prove facts it has not alleged or that defendants have violated the law in ways that have not been alleged.  *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*  Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  "[W]hile notice pleading may not require that the pleader allege a 'specific fact' to cover

36

every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.' " *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quoting *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).[15]

## B. DISCUSSION

### 1. Count One – Libel and Slander

Defendants have moved to dismiss plaintiff's libel and slander claim on the ground that the statements at issue are not defamatory.  The City argues, "The comments relied upon by the Plaintiff in the instant case do not even impugn the Plaintiff's claim or his tactics.  When read in the context of the remainder of the articles, which are very favorable to the Plaintiff's cause, no reasonable reader would ascribe to them any meaning which would harm his reputation.  That some in the community may be opposed to his claim for whatever reason is simply irrelevant."  (Doc. 4-1 at 16.)

Plaintiff complains about statements made by Willett, Ennis, and Nunnally appearing in the *Tuscaloosa News*.[16]  He complains the following statement were defamatory:

_____

[15]The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[16]The court may consider these articles without converting defendants' 12(b)(6) motions to summary judgment motions because the articles are "central to the plaintiff's claim[s]," and the "authenticity [of the articles] is not challenged."  *SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)(citing *Maxcess, Inc.*

1.  Willett said, "We just wanted [plaintiff] to pay into [the Fund] first," in an article in the August 30, 2009, edition of the *Tuscaloosa News;*

2.  Nunnally said, "We'll just ask Met Life to pay Mr. Bies the money he's owed under the hourly pension plan," and Plaintiff was "invited to apply [for a job with the Tuscaloosa Police Department] by the chief, took the test, didn't pass it, according to Marable[, the former Chief of Police,] . . . [he was] hired as special police officers, given a badge, and told to go arrest people."

3. Ennis said that Bies never paid into the Fund and "that he was working to retrieve information about the court order and why Bies [was not] allowed to pay into the police pension when [he was] hired."

(Doc. 1-1 at 12.)  Each of these statements were reported in newspaper articles discussing Bies's attempts to obtain a pension from the Policemen's Pension Fund throughout his employment and after his retirement.  Plaintiff contends that these statements impugn his character because they created the impression that he was a "free loader," a "gold digger," and that he was seeking something for nothing.  (Doc. 1-1 at 12-13.)  He alleges:

> The false and defamatory comments relegate the plaintiff to the status of the "hourly employee' and/or Street and Sanitation pension fund and strip him of the prestige that he earned as a sworn police officer for the City of Tuscaloosa. The comments reaffirm the defendants['] belief that the plaintiff was nothing more than a "special officer" or "glorified security guard" and [their] disdain for the plaintiff's service and accomplishment.

---

*v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).

(*Id.*)[17]   The newspaper articles at issue indicate that Bies told the reporter that he had not been

allowed to contribute to the Policemen's Pension Fund.  Moreover, the record in the *Gosa*

case shows that Bies's prior counsel represented to the court that he had not participated in

the Policemen's Pension Fund and that he had participated in the Hourly Employees Pension

Plan.

According to the Eleventh Circuit –

Under Alabama law, [footnote] whether a statement is reasonably capable of defamatory meaning is a question of law for the court. *See Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999)(citing *Harris v. School Annual Publ'g Co.*, 466 So. 2d 963, 964 (Ala. 1985)); *Drill Parts* [full cite], 619 So. 2d at 1289-90.  A statement is defamatory if it "tends . . . to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Blevins*, 768 So. 2d at 389-90 (internal quotations omitted)(citing *Harris*, 466 So. 2d at 964).  When analyzing an allegedly defamatory statement, a court must give the statement's language the "meaning that would be ascribed to the language by a reader or listener of average or ordinary intelligence, or by a common mind."  *Id.* at 390 (internal quotations omitted)(citing *Camp v. Yeager*, 601 So. 2d 924, 927 (Ala. 1992)); *see also Labor Review Publ'g Co. v. Galliher*, 153 Ala. 364, 45 So. 188, 190 (1907).  Furthermore, the "alleged defamatory matter must be construed in connection with other parts of the conversation or publication, and the circumstances of its publication  . . . ." *Marion v. Davis*, 217 Ala. 16, 114 So. 357, 359 (1927); *see also Drill Parts*, 619 So. 2d at 1289.

[Footnote] To state a defamation claim in Alabama, a plaintiff must allege:  (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party;

---

[17]The statements at issue could not possibly be understood to mean that the defendants believed plaintiff was "nothing more than a 'special officer' or 'glorified security guard'" nor could the statements possibly be understood to reflect "disdain for the plaintiff or his service or accomplishments."

(3) fault amounting at least to negligence on the part of the defendant; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *McCaig v. Talladega Pub'g Co.*, 544 So. 2d 875, 877 (Ala. 1989) (citing Restatement (Second) of Torts § 558 (1977)).

Equally well established is the rule that once a plaintiff has alleged that the statement defamed him in a certain manner, the plaintiff is thereafter bound by that construction of the statement. *See Smith Bros. & Co. v. W.C. Agee & Co.*, 178 Ala. 627, 59 So. 647, 648 (1912)(citing *Gaither v. Advertiser Co.*, 102 Ala. 458, 14 So. 788 (1894)); *Labor Review* [full cite??], 45 So. at 190.

*U.S. Steel v. Tieco, Inc.*, 261 F.3d 1275, 1293 (11th Cir. 2001).  "The test to factually determine the defamatory nature of a statement is that meaning that would be ascribed to the language by a reader or listener of 'average or ordinary intelligence, or by a common mind.'" *Camp v. Yeager*, 601 So. 2d 924, 927 (Ala. 1992)(quoting *Loveless v. Graddick*, 325 So. 2d 137, 142 (Ala. 1975)).  "Specifically in regard to a newspaper article, a court must consider 'whether an ordinary reader or a reader of average intelligence, ***reading the article as a whole***, would ascribe a defamatory meaning to the language.'"  *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999)(quoting *Drill Parts and Service Co., Inc. v. Joy Mfg. Co.*, 619 So.2d 1280, 1289 (Ala. 1993))(emphasis added).

The court finds, as a matter of law, the statements at issue, read in context, do not explicitly or implicitly defame Bies.  The "meaning" of the articles is that plaintiff had not been allowed to contribute to the Policemen's Pension Fund due to his classification as a special officer in 1966 and his re-classification as a regular officer in 1976, when he was too old to participate in the Policemen's Pension Fund.  Also, the articles recount his fight to join

the Policemen's Pension Fund over his 25-year career and in the years after his retirement, as well as his dissatisfaction with being considered a participant in the Hourly Employees' Pension Fund.  The statements at issue, in the context of the entire articles, cannot be understood to accuse Bies of trying to get a pension he does not deserve.   Moreover, the statements at issue do not contain any fact regarding his participation that Bies has not made in his Motion for Modification of Decree in *Gosa* or in statements in the press.

The court finds that the statements are not defamatory as a matter of law.  Therefore, defendants' Motions to Dismiss are due to be granted[18] and Count One of plaintiff's First Amended Complaint will be dismissed.

## 2.  Count Two – Invasion of Privacy, Count Three – Negligence, and Count Four – Wantonness

Plaintiff contends that defendants made "false and defamatory statements" that "intruded into [his] physical solitude, gave publicity to private information . . . and put [him] in a false light."  (Doc. 1-1 at 13.)  He also alleges that "[d]efendants[ ] had a duty to keep [his] personnel information private and to be honest about the same," and that they "breached this duty by being dishonest and by wrongfully disclosing the plaintiff's private personnel information."  (*Id*. at 14.)  Moreover, he contends the defendants statements were malicious. (*Id*.)

---

[18]The court pretermits discussion of defendants' arguments that statements were privileged and/or the City has immunity from plaintiff's defamation claims.

The court finds that plaintiff's negligence and wantonness claims are merely a restatement of his defamation and invasion of privacy claims.

The Board contends that dismissal of plaintiff's defamation claim compels dismissal of his other claims.  The City argues that plaintiff cannot complain about the comments made by the City because, "Thanks in large part to the plaintiff and *The Tuscaloosa News*, the issue of the Plaintiff's pension rights has been a matter of public interest for years."  (Doc. 4-1 at 17.)  Also, the City argues that the statements of its agents indicate only what action it was contemplating – "checking on why the Plaintiff had been unable to pay monies into the Pension Fund when he was first employed in 1966 (Robert Ennis) and, later, attempting to assist the Plaintiff in obtaining some monetary relief under the Hourly Pension Fund (Tim Nunnally)."  (Doc. 4-1 at 18-19.)

In Alabama,

> [The Alabama Supreme] Court has defined the tort of invasion of privacy as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.  The tort of
>
>> invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.
>
> Each of these categories of invasion of privacy has distinct elements, and each category establishes a separate privacy interest that may be invaded.

42

*S.B. v. Saint James School*, 959 So. 2d 72, 90 (Ala. 2006)(quoting *Rosen v. Montgomery Surgical Ctr.*, 825 So. 2d 735, 737 (Ala. 2001)(quoting *Carter v. Innisfree Hotel, Inc.*, 661 So. 2d 1174, 1178 (Ala. 1995)) and *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala.1997); citing *Regions Bank v. Plott*, 897 So. 2d 239 (Ala. 2004))(internal citations and quotations omitted).  "Obviously, there can be no privacy in that which is already public."  *Johnson v. Stewart*, 854 So. 2d 544, 549 (Ala. 2002)(quoting *Abernathy v. Thornton*, 83 So. 2d 235, 237 (1955)(quoting Hepburn, *Cases on Torts*, p. 504))(internal quotations omitted).  Therefore, "a plaintiff cannot claim a right of privacy in publicly known information."  *Cash v. Smith*, 231 F.3d 1301, 1308 (11th Cir. 2000)(citing *Johnston v. Fuller*, 706 So. 2d 700, 703 n.2 (Ala. 1997); *Abernathy v. Thornton*, 83 So. 2d 235, 237 (1955)).

Plaintiff argues that the statements published in the *Tuscaloosa News* concerned "private information."  However, as set forth above, the fact that Bies was not allowed to participate in the Policemen's Pension Fund and the fact that he did not pay into the Policemen's Pension Fund are not "private" facts.  Indeed, Bies had discussed his lack of a pension from the Policemen's Pension Fund at length and his lack of participation has been the subject of public legal proceedings.  Therefore, the court finds, as a matter of law, that plaintiff cannot claim a privacy interest in the statements of publically known information.

Defendants' Motions to Dismiss will be granted as to plaintiff's privacy claim, as well as his negligence and wantonness claims.  These claims will be dismissed.

### 3.  Count Five – Conspiracy

"Liability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy." *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2008)(quoting *Jones v. BP Oil Co.*, 632 So. 2d 435, 439 (Ala.1993)(citing *Allied Supply Co. v. Brown*, 585 So. 2d 33 (Ala. 1991); *Webb v. Renfrow*, 453 So. 2d 724 (Ala.1984)))(internal quotations omitted). Because the court finds that plaintiff's claims of defamation, invasion of privacy, negligence and wantonness are due to be dismissed, his conspiracy claim is also due to be dismissed.

Defendants' Motions to Dismiss will be granted and plaintiff's conspiracy claim will be dismissed.

### 4. Count Six – Constitutional Due Process and Equal Protection Violation and Right to Privacy (Section 5 of the Alabama Constitution, 42 U.S.C. § 1983 and the 14th and 5th Amendments to the United States Constitution)

#### a.  Procedural Due Process

Plaintiff alleges that defendants' "denial of access to the public records requested . . . coupled with their public campaign defending their decision to deny the plaintiff entry into the [Policemen's Pension] Fund . . . , amount[ed] to a denial of the plaintiff's federal and state due process and equal protection rights as identified in the 14th and 5th amendments to the United States Constitution . . . ."[19]  (Doc. 1-1 at 16.)  "To prevail upon [his] procedural

---

[19]"The Fifth Amendment Due Process Clause, however, cannot provide a basis for liability because it 'applies only to the federal government.'" *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1335 (M.D. Ala. 2007)(quoting *Sweatt v. Bailey*, 876 F. Supp. 1571,

due process claim, [plaintiff] must establish: (1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson County v. Cherry*, 980 F.2d 1362, 1366 (11th Cir. 1993) (citing *Lehr v. Robertson*, 463 U.S. 248, 256 (1983); *Greenholtz v. Inmates of the Nebraska Penal and Correction Complex*, 442 U.S. 1, 7 (1979); *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972)). "Failure to establish any one of these elements is fatal to [plaintiff's] due process claim." *Id.*

Plaintiff's First Amended Complaint does not allege any protected interest in the requested documents. (*See* doc. 1-1 at 16-18.) However, in his proposed Second Amended and Restated Complaint, plaintiff alleges that he has "a liberty interest, a property interest[,] and a privacy interest in his retirement benefit, monetary distributions, health benefits[,] and retirement personnel information." (Doc. 34 ¶ 32.)

Any § 1983 claim based on his retirement benefit, monetary distributions, health benefits is time barred. Plaintiff retired in August 1991; any constitutional deprivation of these interests occurred more than two years before plaintiff filed his § 1983 claim in December 2009.

---

1582 (M.D. Ala. 1995); citing *Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997); *Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1186 (M.D. Ala. 1999)).

### I.  Liberty Interest

"The liberty protected by the Due Process Clause affords protection against unwarranted Government interference with freedom of choice in the context of certain personal decisions."  *Garcia v. United States*, 666 F.2d 960, 964 (11th Cir. 1982)(citing *Harris v. McRae*, 448 U.S. 297, 317-18(1980)).  The Supreme Court has held:

> While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely [1] freedom from bodily restraint but also [2] the right of the individual to contract, [3] to engage in any of the common occupations of life, [4] to acquire useful knowledge, [5] to marry, establish a home and bring up children, [6] to worship God according to the dictates of his own conscience, and generally [7] to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.

*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), *quoted in Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972).

Plaintiff has not alleged facts sufficient to support a finding that he had a liberty interest in the requested documents.

### ii.  Property Interest

"A property interest is an ***entitlement*** to a Government benefit arising out of law or contract.  It is not created by the Constitution."  *Garcia v. United States*, 666 F.2d 960, 964 (11th Cir. 1982)(citing *Roth*, 408 U.S. at 577).  Plaintiff contends that the loss of his retirement benefit "is a traditional tangible and quantifiable monetary right."  (Doc. 34 at 11 n.2.)  However, as set forth above, any § 1983 claim based on the retirement benefit is time-

barred.  Moreover, plaintiff has not alleged that he has a protected property interest in the documents requested.

Because plaintiff has not alleged a constitutionally protected interest in the requested documents, his § 1983/due process claim is due to be dismissed.

### b.  Substantive Due Process – Right to Privacy

Plaintiff alleges, "The defendants['] refusal to allow the plaintiff access to the public records requested . . . amount[s] to a denial of the plaintiff's right to privacy . . . ." (Doc. 1-1 at 17.)

The court cannot imagine any fundamental right to privacy that is infringed by ***not*** producing and disseminating personnel documents.  Indeed, in this case, Bies has used the public media to discuss the personal details of his personnel records and the tribulations faced in his forty year struggle to join the Policemen's Pension Fund.  "[A] state's publication of truthful information that is already available to the public does not infringe the fundamental constitutional rights of liberty and privacy."  *Doe v. Moore*, 410 F.3d 1337, 1345 (11th Cir. 2005).

The court finds that plaintiff's First Amended Complaint fails to state a cause of action for violation of his constitutional right to privacy.  Defendants' Motions to Dismiss will be granted.

### c. Equal Protection

"To properly plead an equal protection claim, a plaintiff must allege that, through state action, similarly situated persons are treated disparately." *Austin v. City of Montgomery*, 353 Fed. Appx. 188, 191 (11th Cir. 2009)(citing *Thigpen v. Bibb County*, 223 F.3d 1231, 1237 (11th Cir. 2000), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)); *see also GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367-68 (11th Cir. 1998)("Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' applicants were situated similarly to the plaintiff.")

Plaintiff's First Amended Complaint contains no allegations that the City or the Fund treated him less favorably than similarly-situated individuals requesting public records. His proposed Second Amended Complaint contends that Bies was "treated differently than all other retirees in violation of the Equal Protection Clause of the US Constitution in that other retirees have been afforded the full benefit of any and all rights and privileges thereto." (Doc. 34 ¶ 34.)  This allegation does not contain any information that Bies was "similarly situated" to all other retirees.  Indeed, the record demonstrates that plaintiff is not similarly situated to other retirees.  For one thing, plaintiff does not allege that all other retirees requested and received their personnel documents, even if they had not used the City's form. Moreover, he does not allege that other retirees, who did not receive pension benefits, waged

48

a public campaign for such benefits to which the defendants did not respond or that defendants provided ineligible retirees benefits years after such employees had retired.

Defendants' Motions to Dismiss will be granted and plaintiff's § 1983 claim based on the Equal Protection Clause will be dismissed.

### d.  Section 5 of the Alabama Constitution

Article I, Section 5 of the Alabama Constitution provides, "That the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizure or searches, and that no warrants shall issue to search any place or to seize any person or thing without probable cause, supported by oath or affirmation."  Ala. Const. Art. I, § 5.  Plaintiff has alleged no facts to indicate that he has any claim based on an illegal search and/or seizure.

Therefore, defendants' Motions to Dismiss will be granted and plaintiff's claim based on § 5 of the Alabama Constitution will be dismissed.

### 5.  Count Seven – Statutory Violations of the Open Records Act

Defendants contend that plaintiff has failed to allege a violation of the Open Records Act because the Policemen's Pension Board is not a public entity subject to the Act and because he failed to allege he followed the City's procedures and/or that the records in the City's possession are not subject to disclosure.  Plaintiff contends that he needs discovery to determine whether some of the records requested are exempt.  (Doc. 7 at 3-4.)  The court disagrees.

49

Alabama law is clear that personal pay records are generally not discoverable under the Open Records Act. *Blankenship v. City of Hoover*, 590 So. 2d 245, 250 (Ala. 1991); *Stone v. Consolidated Pub. Co.*, 404 So. 2d 678, 681 (Ala. 1981). Moreover, plaintiff has not alleged that he complied with all appropriate procedures for requesting the documents and/or that the procedures are improper. Without such allegations, plaintiff has not alleged sufficient facts to render his claim plausible. *See Twombly*, 550 U.S. at 556.

Defendants' Motions to Dismiss plaintiff's Open Record Act claim will be granted and this claim will be dismissed.

## IV. <u>MOTION TO AMEND</u>

Plaintiff has filed a Motion for Leave to File an Amended Complaint. (Doc. 36.) Plaintiff filed a Second Amended and Restated Complaint, (doc. 34), on April 21, 2010, without seeking leave of the court. His proposed Second Amended and Restated Complaint seeks to add a number of defendants as well as a number of new claims. (*Id.*)

Plaintiff contends:

> Per the Court's request, [footnote] the plaintiff moves this Court to grant him leave to amend his complaint. Matters covered in [the] amended complaint were discovered upon receipt of the defendant City of Tuscaloosa's April 16, 2010 initial disclosures and the parties have agreed to allow until May 30, 2010 to amend complaint and add additional parties.

> [footnote]: Judge Blackburn's office called and directed counsel to file a motion for leave to amend the complaint pursuant to Rule 15(a). Rule 15(a) states that after a responsive pleading is filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." The parties in this case have agreed pursuant to their initial meeting and filed a signed written statement affirming that the

> plaintiff is "allowed until May 30, 2010 to join additional parties and
> to amend the pleadings."

(*Id.*)

Rule 15(a) of the Federal Rules of Civil Procedure provides:

(1)  Amending as a Matter of Course.  A party may amend its pleading once
as a matter of course within:

> (A)  21 days after serving it, or
> (B)  if the pleading is one to which a responsive pleading is required,
> 21 days after service of a responsive pleading or 21 days after service
> of a motion under Rule 12(b), (e), of (f), whichever is earlier.

(2)  Other Amendments.  In all other cases, a party may amend its pleading
only with the opposing party's written consent or the court's leave.  The court
should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(1)-(2).

Contrary to plaintiff's assertion, the Rule 26(f) Report of the Parties' Planning
Meeting does not constitute defendants' written consent to any and all future amendments
to his Complaint pursuant to Fed. R. Civ. P. 15(a)(2).  The report simply establishes the
parties' proposed deadline for seeking to amend the pleadings; it does not "grant leave in
advance to file unknown pleadings by that date."  *See Vulcan Marketing, Inc. v. Technical
Consumer Products, Inc.*, 597 F. Supp. 2d 1266, 1268 (N.D. Ala. 2009)(citing *Davis v.
Ramsey*, No. 04-06763, 2008 WL 5382004)(E.D. Cal. 2008)).  Therefore, plaintiff was
required to seek leave of the court before filing his Second Amended Complaint.  Fed. R.
Civ. P. 15(a)(2).

Rule 15(a)(2) of the Federal Rules of Civil Procedure requires the district court to "freely give leave [to amend the Complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In other words, "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981), *quoted in Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999).

The Supreme Court has held that "substantial reasons" to deny leave to amend include, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)(citing *Hall v. United Insurance Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004)). The court finds the additional claims set forth by plaintiff are futile and his Motion for Leave to Amend will be denied.

Plaintiff's Second Amended Complaint seeks to add Counts Eight through Count Sixteen and the Travelers, Mike Daugherty, and the Hourly Wage Fund as defendants.[20]

_____

[20]Plaintiff's Second Amended Complaint contains the following Counts and allegations:

COUNT EIGHT - SLANDER & LIBEL/SLANDER & LIBEL PER SE

. . .

41.   The City of Tuscaloosa and the City of Tuscaloosa Hourly Retirement Fund had knowledge of the fact that the plaintiff had a benefit available under the Hourly Fund in the amount of $1, 638.41.  [H]owever defendant City of Tuscaloosa, Mike Daugherty and the Hourly Fund only disclosed to the public that the plaintiff only earned a meager few hundred dollars a month.

42.  In spite of this, the defendants' City of Tuscaloosa and the Hourly Fund negligently and intentionally published false and defamatory statements about the plaintiff.  Specifically, the defendants' City of Tuscaloosa and the Hourly Fund negligently and/or intentionally made statements, concealed information and conspired to the leave the false public impression that plaintiff Bies service only resulted in a retirement valued at a few hundred dollars.

. . .

COUNT NINE - INVASION OF PRIVACY/FALSE LIGHT

. . .

45.  With knowledge of their falsity and/or reckless disregard for the same, the defendants' City of Tuscaloosa and the Hourly Fund's false and defamatory statements intruded into the plaintiff's physical solitude, gave publicity to private information about the plaintiff that violates ordinary decency & put the plaintiff in a false light.

. . .

53

## COUNT TEN - NEGLIGENCE

. . .

48.  The Defendants City of Tuscaloosa, Travelers and the Hourly Fund had a duty to advise the plaintiff of any and all benefits available to him and to be honest about the same.  The defendants breached this duty by being dishonest and by not disclosing the higher benefit and other benefits he received throughout his tenure and by not disclosing his rights to challenge the same under any and all applicable funds.

## COUNT ELEVEN - WANTONNESS

. . .

50.  The statements that suggested the plaintiff had not made payments to and earned the right to participate in the Hourly Fund at the higher benefit rate were malicious in that they had to be (1) "fabricated," (2) "so inherently improbable that only a reckless man would have put [it] in circulation," or (3) "based wholly on" a source that the defendant had "obvious reasons to doubt."

## COUNT TWELVE - CONSPIRACY

. . .

52.   The Defendants' City of Tuscaloosa and the Hourly Fund negligently and/or intentionally engaged in a pattern and practice of conspiring and cooperating and planning to create the impression that the value of the plaintiffs' [sic] service as evidenced by his retirement benefit was lower than it actually was.  Therefore, said false impressions constitute the policy of the defendants.

53.  In other words, the defendants' plan was to humiliate and degrade the plaintiff in order to gain a public and political advantage, in order to appear as though they were on the moral high ground.

. . .

COUNT FOURTEEN – FRAUDULENT
CONCEALMENT/MISREPRESENTATION

. . . . .

61.  On or around 1991 the plaintiff retired and on or around 1991 and
February 2009, the plaintiff asked the defendants City of Tuscaloosa, Travelers
(as plan administrator), Mike Daugherty, Mayor Dupont, Mayor Maddox, and
City Attorney Nunnally to tell him about the benefits he earned throughout his
twenty-five (25) year service to the defendants.   The aforementioned
defendants advised him that he had only earned a benefit equal to a life annuity
of $186.59 per month.

62.   These defendants intentionally concealed another benefit in a
higher amount.  The agents of Travelers, namely, Dave Lozinski, Nell Boland
and Steve Payzant, knew or should have known that the plaintiffs were not
fully aware of benefits available to them as Cindy Winston notified them in her
letter of July 9, 1991 to "RUSH this retirement through.  There is potential for
a law suit . . . ."  Furthermore, as plan administrator, Travelers had a duty to
make sure plan members were notified about all benefits that they were
entitled to.  They breached this duty by failing to disclose the higher benefit to
the plaintiff.

63.   Plaintiff Bies relied to his detriment on this representation as he
was denied an opportunity to consider the higher amount and has lost
additional retirement as a result of the same.  Plaintiff Bies first heard about
and discovered that the higher benefit was available a few days ago when
made aware of the 8/13/91 Travelers memorandum to Mike Daugherty
advising the defendants herein of the same.

COUNT FIFTEEN (BREACH OF CONTRACT)

. . .

65.  The plaintiff is a third party beneficiary of the contract between the
City of Tuscaloosa and the Travelers.  Travelers promised to provide the
plaintiff a benefit in the amount of $1, 638.41 upon his retirement.  The City
agreed to pay for and provide this benefit.  Both parties failed to notify the

These new claims are based on plaintiff's contention that he was entitled to a monthly benefit of $1,638.41, and that defendants either concealed this entitlement or made public statements to the contrary.  (*See* doc. 34 ¶ 41.)  His claim to a monthly benefit of $1,638.41 is based on a 1991 letter from Travelers to Mike Daugherty, which discusses the price of purchasing an annuity to provide plaintiff with a monthly benefit of an additional $1,638.41, over the amount he was entitled to under the Hourly Employees' Plan, $186.59.  (See doc. 34 ¶¶; doc. 45-4 at 8.)  The letter is nothing more than a price quote.  (*See* doc. 45-4 at 8.)  It does not prove plaintiff's entitlement to a monthly pension of $1,638.41.

Therefore, Counts Eight through Twelve and Fourteen through Fifteen, which are based on plaintiff's alleged entitlement to a monthly benefit of $1,638.41, would be subject to dismissal.  Therefore, plaintiff's Motion to Amend to add these Counts will be denied as futile.

Count Thirteen of plaintiff's proposed Second Amended Complaint restates his claim for relief based on defendants' failure to produce certain public records requested by plaintiff and public statements made regarding his pension benefits.  (*See* doc. 34 ¶¶ 55-58.)  This court repeats allegations made in plaintiff's previous Complaints.  Therefore, for the reasons

---

plaintiff of the availability of said benefit and otherwise failed to offer the same to him.  Therefore, they breached said contract.

(Doc. 34 ¶¶ 41-65.)

set forth above, Count Thirteen is futile and plaintiff's Motion to Amend to add this Count will be denied.

Finally, in Count Sixteen of his Second Amended Complaint, plaintiff alleges:

> 67.  The defendants City, Daugherty and Travelers had a duty as the plan administrators and owners of the plan to manage the plaintiff's funds in a fair and reasonable manner.  By unlawfully and negligently distributing and wasting said funds and otherwise concealing all the benefits due under the same, the defendants breached their duty to manage said funds in a reasonable fashion.

(Doc. 34 ¶ 67.)

Given the evidence discussed *supra* that any money plaintiff contributed to the Hourly Employees' Pension was refunded to him, and evidence that the City never funded an annuity with Travelers, plaintiff's breach of fiduciary duty is futile.  The evidence is undisputed that the City never funded any annuity for plaintiff; therefore, no funds could be distributed or wasted.  No benefit was concealed.  Also, any breach of duty claim is barred by the two-year statute of limitations.  *See Brooks v. Hill*, 717 So. 2d 759, 764 (Ala. 1998).  Plaintiff's Motion to Amend to add Count Sixteen will be denied.

Based on the foregoing, plaintiff's Motion to Amend will be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the court is of the opinion that plaintiff is not entitled to judgment as a matter of law; that plaintiff's First Amended Complaint and his proposed Second Amended and Restated Complaint fail to state a claim for which relief can be granted.  The court will enter an Order denying plaintiff's Motions for Partial Summary

Judgment, (doc. 1-2 at 21-25; doc. 8; and doc. 45); denying the City's Motions to Abate, (doc. 1-3; doc. 4); granting defendants' Motions to Dismiss, (doc. 1-3; doc. 1-6 at 13-21; doc. 4; and doc. 12); and denying plaintiff's Motion for Leave to File Amended Complaint, (doc. 36), contemporaneously with this Memorandum Opinion.

**DONE**, this 31st day of March, 2011.

*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE